IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SONRISA REALTY PARTNERS, | § | CASE NO. 10-80026-G3-11 |
| LTD. | § | |
| | § | |
| DEBTOR | § | |

**COMPASS BANK'S THIRD AMENDED PLAN OF LIQUIDATION**

**FOR SONRISA REALTY PARTNERS, LTD.**

**Date:  February 21, 2011.**

Bruce J. Ruzinsky
Jackson Walker L.L.P.
1401 McKinney, Suite 1900
Houston, Texas  77010
(713) 752-4204 (Telephone)
(713) 481-6262 (Telecopier)
bruzinsky@jw.com (e-mail)

ATTORNEY FOR COMPASS BANK

1

6043191v.1

Compass Bank proposes this Third Amended Plan of Liquidation.

# I.
## DEFINTIONS

The following terms and definition shall apply throughout this Plan except where the context requires otherwise.

**"Administrative Claim"** means a Claim for any cost or expense of administration of the Bankruptcy Case under section 503(b) of the Bankruptcy Code, including, without limitation, any fees or charges assessed against the Estate of the Debtor pursuant to 28 U.S.C. § 1930, any further including a Cure Claim and a Professional Claim.

**"Administrative Claims Bar Date"** means the day that is thirty (30) days after the Effective Date.

**"Ad Valorem Tax Claim"** means a Claim of Galveston County against the Debtor, Estate, or property of either, solely on account of years 2007-2010.  The term includes any Claim for *ad valorem* taxes that accrued on or after January 1, 2007 and that was payable on or before January 31, 2011 without interest.  The term excludes any Claim for *ad valorem* taxes for any year prior to the year 2007, including any such Claim that became payable earlier than January 31, 2008 without interest.

**"Allowed"** means, as it relates to any type of Claim provided for under this Plan, a Claim: (i) which has been scheduled as undisputed, noncontingent, and liquidation in the Schedules in an amount other than zero or unknown, and as to which: (a) no proof of Claim has been timely filed, and (b) no objection thereto has been timely filed as (determined by applicable deadlines contained in this Plan, including the Claims Objection Deadline); (ii) as to which a proof of Claim has been timely filed and either: (a) no objection thereto has been timely filed (as determined by applicable deadlines contained in  this Plan, including the Claims Objection Deadline), or (b) such Claim has been allowed (but only to extent allowed) by a Final Order of the Bankruptcy Court; (iii) which has been expressly allowed under the provisions of this Plan; or (iv) which has been expressly allowed by Final Order of the Bankruptcy Court.

**"Allowed Administrative Claim"** means: (i) an Administrative Claim that has been Allowed (but only to the extent Allowed), if approval from the Bankruptcy Court is required in order to Allow same; and (ii) an Administrative Claim which: (a) is incurred by the Debtor after the Petition Date in the ordinary course of its business operations or pursuant to an order entered by the Bankruptcy Court granting Administrative Claim status; (b) is not disputed by the Debtor, any Creditor, or the Reorganized Debtor; and (c) does not require approval from the Bankruptcy Court to become allowed.

**"Allowed Compass Bank Secured Claim"** means Compass Bank's Secured Claim that is Allowed in the amount of $7,664,457.42 plus post-petition interest, costs and attorneys fees.

**"Allowed Priority Claim"** means Priority Claim that has been Allowed (but only to the extent Allowed).

**"Allowed Secured Claim"** means a Secured Claim that has been Allowed (but only to the extent Allowed).

**"Allowed Unsecured Claim"** means an Unsecured Claim that has been Allowed (but only to the extent Allowed).

**"Auction"** means any auctions for the sale of the Property pursuant to competitive bidding.

**"Auction Procedures"** means the procedures for the sale via auction of all of the Debtor's assets, as set forth in Exhibit "A" attached hereto.

**"Avoidance Actions"** means any and all rights, claims or actions which the debtor may assert on behalf of the Estate under chapter 5 of the Bankruptcy Code, including actions under more or more provisions of sections 542, 544, 545, 546, 547, 548, 549, 550, 551, and/or 553 of the Bankruptcy Code, except to the extent that any such rights, claims or actions are released or waived in this Plan.

**"Ballot"** means the ballot, the form of which has been approved by the Bankruptcy Court, accompanying the Disclosure Statement provided to each holder of a Claim entitled to vote to accept or reject this Plan.

**"Bankruptcy Case"** means the bankruptcy case initiated by Sonrisa Properties, Ltd., in the Bankruptcy Court on the Petition Date, administered under Case Number 10-80012-G3-11.

**"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, in effect as of the Petition Date and as may have been or may be amended or supplemented since, to the extent that any such amendment or supplement is automatically applicable to the Bankruptcy Case by operation of law and not by operation of any election or choice.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of Texas, Galveston Division or, if such Court ceases to exercise jurisdiction, the Court or adjunct thereof that exercises jurisdiction over the Bankruptcy Case.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, together with the local bankruptcy rules for the Bankruptcy court as now in effect or as the same may from time to time hereafter be amended.

**"Bar Date"** means May 5, 2010, the date set by the Bankruptcy Court for filing proofs of claim other than governmental Claims, and _____, 2010 with respect to governmental Claims.

**"Business Day"** means any day which is not a Saturday, a Sunday or a "legal holiday" within the meaning of Bankruptcy Rule 9006(a).

**"Claim"** means a claim against the Debtor, the Estate, and/or property of the Debtor or the Estate, as such term is otherwise defined in Section 101(5) of the Bankruptcy Code, arising prior to the Effective Date.

"**Claims Objection Deadline**" means the date by which parties authorized by the Plan may file any objection to a Claim, which date shall be prior to the Effective Date, except with respect to Administrative Claims as otherwise provided for herein.

"**Class**" means one of the categories of Claims established under Article II of the Plan.

"**Closing**" means the consummation of the sale of the Property resulting from the Auction.

"**Compass Bank**" means Compass Bank, which is a secured creditor of the Debtor.

"**Compass**" means Compass Bank.

"**Confirmation Date**" shall mean the date upon which the Confirmation Order is entered by the Clerk of the Bankruptcy Court.

"**Confirmation Hearing**" shall mean the hearing held by the Bankruptcy Court to consider confirmation of the Plan.

"**Confirmation Order**" shall mean the order entered by the Bankruptcy Court confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

"**Creditor**" means the holder of any Claim entitled to distributions with respect to such Claim.

"**Cure Claim**" shall refer to the payment or other performance required to cure any existing default under an Executory Contract in accordance with Section 365 of the Bankruptcy Code.

"**Debtor**" means Sonrisa Realty Partners, Ltd.

"**Disallowed Claim**" means, as it relates to any type of Claim provided for under this Plan, a Claim or portion thereof that: (i) has been disallowed by a Final Order of the Bankruptcy Court, (ii) is identified in the Schedules in an amount of zero dollars, unknown dollars, or as contingent, unliquidated, and/or disputed, and as to which a proof of Claim was not filed by the Bar Date; or (iii) is not identified in the Schedules and as to which no proof of Claim has been filed or deemed filed by the Bar Date, if the filing of such proof of Claim is otherwise required.

"**Disbursing Agent**" means Elizabeth Guffy, or any successor to her. There shall be only one Disbursing Agent for both the Debtor's Plan and the Plan of Liquidation filed by Compass Bank in the Sonrisa Properties, Ltd. case.

"**Disbursing Agent Reserve**" means (a) in the event of a cash sale of the Property: $20,000.00 from the Net Sale Proceeds, or (b) in the event of a credit bid sale of the Property: $25,000.00 from Compass Bank. There shall be only one Disbursing Agent Reserve for both the Debtor's Plan and the Plan of Liquidation filed by Compass Bank in the Sonrisa Properties, Ltd. case of which $25,000 in the aggregate shall be funded from the Debtors.

4

**"Disclosure Statement"** means the Amended Disclosure Statement with respect to this Plan, approved by the Bankruptcy Court as containing adequate information for the purpose of dissemination and solicitation of votes on confirmation of this Plan, or as it may be altered, amended, or modified from time to time in accordance with Sections 1125, 1126(b), and 1145 of the Bankruptcy Code and Bankruptcy Rule 3018.

**"Disputed Claim"** means any Claim or any portion thereof which is neither Allowed nor is a Disallowed Claim as of the close of the Claims Objection Deadline.  In the event that any part of a Claim is a Disputed Claim, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of distribution under this Plan unless the party responsible for the payment thereof, the objecting party, and the holder thereof agree otherwise or unless otherwise ordered by the Bankruptcy Court; *provided, however,* that nothing in this definition of "Disputed Claim" is intended to or does impair the rights of any holder of a Disputed Claim to pursue its rights under Section 502(c) of the Bankruptcy Code. Without limiting any of the foregoing, but subject to the provisions of this Plan, a Claim that is the subject of a pending application, motion, complaint, objection, or any other legal proceeding seeking to disallow, limit, subordinate, or estimate such Claim, as of the Claims Objection Deadline, shall be a Disputed Claim unless and until the entry of a Final Order providing otherwise.

**"Effective Date"** mean the first Business Day following the fourteenth (14th) day after the Confirmation Date if the Confirmation Order is not stayed or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay which is at least fourteen (14) days after the Confirmation Date, and upon which the conditions to the Plan are satisfied.

**"Estate"** means the estate created for the Debtor pursuant to Section 541 of the Bankruptcy Code and any other applicable provision thereof.

**"Equity Interest"** means the interest represented by an "equity security" as defined in Section 101(16) of the Bankruptcy Code.

**"Executory Contract"** means collectively, "executory contracts" and "unexpired leases" of the Debtor as of the Petition Date as such terms are used within Section 365 of the Bankruptcy Code.

**"Federal Judgment Interest Rate"** means the interest rate for federal judgments which is based on one-year constant U.S. Treasury securities as set forth by 28 U.S.C. § 1961 and 40 U.S.C. § 258(e)(11).

**"Final Decree"** means the final decree entered by the Bankruptcy Court on or after the Effective Date pursuant to Bankruptcy Rule 3022.

**"Final Order"** means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal having jurisdiction over the subject matter thereof which judgment, order, ruling, or other decree has not been reversed, stayed, modified, or amended and as to which any appeal or petition for review, rehearing or *certiorari* has been finally decided and no further appeal or petition for review, rehearing or *certiorari* can be taken or granted.

**"General Unsecured Guaranteed Payment"** means $188,740.50.

**"Governmental Unit"** means a governmental unit as such term is defined in Section 101(27) of the Bankruptcy Code.

**"Net Sale Proceeds"** means all proceeds from the sale of, transfer or conveyance of the portion of the Property owned by the Debtor, net of all respective necessary and actual costs and expenses associated with such transaction (including, without limitation, any auction fees and expenses, broker fees/commissions, advertising, documentation, reasonable attorneys' fees and other costs, fees and expenses approved by the Bankruptcy Court).

**"Other Liquidation Proceeds"** means the net proceeds from liquidation of any assets of the Debtor other than the Property.

**"Person"** means and includes natural persons, corporations, limited partnerships, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other legal entities, irrespective of whether they are governments, agencies, or political subdivisions thereof.

**"Petition Date"** means January 4, 2010.

**"Plan"** means Compass Bank's Third Amended Plan of Liquidation for *Sonrisa Properties, Ltd.,* as proposed by Compass Bank, either in its present form or as it may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules, and all exhibits thereto.

**"Plan Documents"** means the documents that aid in effectuating the Plan as specifically identified as such in the Plan, which will be substantially in the form filed by the Plan Proponent with the Bankruptcy Court prior to the conclusion of the Confirmation Hearing.

**"Plan Proponent"** means the Compass Bank, which has prepared and seeks approval of the Plan.

**"Pre-Confirmation Remaining Sale Proceeds"** means the remaining net sale proceeds from sales approved by the Bankruptcy Court in Orders entered March 31, 2010 and June 29, 2010, which remaining net sale proceeds were set aside for the development/improvement of Compass Bank's remaining collateral.

**"Priority Claim"** means a Claim entitled to priority in payment under Section 507(a) of the Bankruptcy Code, excluding any Claim that is an Administrative Claim.

**"Professional"** means any Person employed or to be compensated pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

**"Professional Claim"** means a Claim by a Professional for compensation and/or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code in connection with an application made to the Bankruptcy Court in the Bankruptcy Case.

**"Property"** means (a) approximately 102 acres in League City, Texas, cross-collateralized to Compass Bank; the Debtor owns approximately 97.5 acres and Sonrisa Properties, Ltd., owns approximately 4 acres, and (b) the account receivable owed by Galveston County Management District #1 as listed in the Debtor's Schedule B-16, and any municipal utility district receivables related thereto.

**"Rejection Claim"** means a Claim arising under section 502(g) of the Bankruptcy Code as a consequence of the rejection of any Executory Contract.

**"Schedules"** means the Schedules of Assets and Liabilities and the Statements of Financial Affairs filed by the Debtor with the clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

**"Secured Claim"** means a Claim that is secured, in whole or in part, (i) by a lien against an asset of the Debtor or the Estate to the extent such lien is valid, perfected, and enforceable under applicable non-bankruptcy law and is not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent that such Claim is secured within the meaning of section 506(a) of the Bankruptcy Code; or (ii) as a result of rights of setoff under section 553 of the Bankruptcy Code.

**"Secured Tax Claim"** means a Claim of a Governmental Unit for the payment of *ad valorem* taxes that is secured by property of the Debtor, or the Estate, but that is not an Administrative Tax Claim.

**"Sonrisa Properties, Ltd."** means the Debtor in Case No. 10-80012-G3-11, United States Bankruptcy Court, Southern District TX, Galveston Division, a co-maker with the Debtor herein under a $8.2 million note and deed of trust to Compass Bank.

**"Sonrisa Realty Partners, Ltd."** means the Debtor herein.

**"Substantial Consummation"** means the earliest day on or after the Effective Date on which the Disbursing Agent makes the first distribution on account of Allowed Claims in any of the following Classes of Claims: (i) Class 1; (ii) Class 2; (iii) Class 3; (iv) Class 4 or (v) 5.

**"Successful Bidder"** means the highest bidder(s) at the Auction for all or a portion of the Property.

**"Unsecured Claim"** means any Claim that is not secured by a valid, enforceable, and unavoidable lien against any asset of the Debtor or the Estate, but excluding any Administrative Claim, Priority Claim, Secured Claim, but including a Secured Claim to the extent not an Allowed Secured Claim but otherwise an Allowed Claim.

**"Unsecured Interest Payment"** means the amount equal to interest at the Federal Judgment Interest Rate on the General Unsecured Guaranteed Payment from the Petition Date to the Effective Date.

**"Unsecured Priority Tax Minimum Payment"** means $2,500.00.

7

**"Voting Deadline"** means the period established by the Bankruptcy Court within which Ballots may be cast on the Plan.

## II.
## GENERAL OVERVIEW OF PLAN

**A.     Interpretation.**  Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective sections, articles of or exhibits to the Plan, as the same may be amended, waived or modified from time to time.  The headings and table of contents in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.  Words denoting the singular number shall include the plural number and vice versa and words denoting one gender shall include the other gender.  All exhibits and schedules attached to the Plan are incorporated herein by such attachment.

**B.     Application of Definitions and Rules of Construction Contained in the Bankruptcy Code.**  Words and terms defined in Section 101 of the Bankruptcy Code shall have the same meaning when used in the Plan, unless a different definition is given in the Plan.  The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

**C.     Other Terms**.  The words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan.  A term used herein that is not defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

## III.
## CLASSES AND TREATMENT OF CREDITORS

**A.     Classification and Treatment of Claims.** The Plan establishes six (6) classes for claims. Such classes of claims and interests are outlined below.

### Class 1 - Administrative Claims - Unimpaired

Class 1 consists of all Administrative Claims against the Debtor that become Allowed Claims. Allowed Administrative Claims include the following claims:

### U.S. Trustee Fees

The U.S. Trustee Fees are current, and all fees accruing prior to and after confirmation will be paid in full prior to or on the Effective Date.

6043191v.1

**Professional Fees:**

Claims of Debtor's counsel, Karen R. Emmott, for representing the Debtor and Sonrisa Properties, Ltd. under Section 507(a)(1). Karen R. Emmott has been paid a retainer of $5,127.00. She estimates that her total fees will be approximately $40,000.00, which will be subject to Bankruptcy Court approval.

The Debtor has filed an application to retain DRDA PLLC as accountants. In the event that application is approved, DRDA PLLC will be entitled to fees subject to Bankruptcy Court approval. At this time it is unclear how much in fees DRDA PLLC will request.

The Administrative Claims of the foregoing professional(s) will be paid in cash, in full, on the Effective Date, or as soon as practicable after such claims become Allowed Claims if the date of allowance is later than the Effective Date.

Any and all requests for allowance of an Administrative Claim (including Professional Fee Claims) must be filed with the Bankruptcy Court and served on Compass Bank, the Debtor and the U.S. Trustee within thirty (30) days following the Effective Date. Any Class 1 Claims not filed within such time period will be forever barred and will not be entitled to receive any distribution of payment under the Plan.

### Class 2 – Unsecured Priority Tax Claims - Impaired

Class 2 consists of all unsecured Priority Tax Claims against the Debtor that are or become Allowed Claims. Class 2 is impaired. Each holder of an Allowed Class 2 unsecured Priority Tax Claim will receive (in full satisfaction of such Allowed Claim), its pro-rata share of Net Sale Proceeds and Pre-Confirmation Remaining Sale Proceeds, all after payment in full of Allowed Claims in Classes 1, 3 and 4; provided however the distribution to holders of Allowed Class 2 Claims shall in the aggregate be no less then the Unsecured Priority Tax Minimum Payment.

### Class 3 - Secured - Ad Valorem Tax Claims - Impaired

Class 3 consists of the Secured Claims of the taxing authorities, secured by real property interests and will be paid in full in cash not later than 30 days after the Auction. Galveston County shall receive interest on its secured ad valorem tax claim from the Petition Date through the Effective Date under 11 U.S.C. § 506(b), as well as from the Effective Date until paid in full under 11 U.S.C. § 1129(b), whether or not characterized as disputed, the statutory rate of 1% per month as required by 11 U.S.C. § 511.

Further, Galveston County shall retain all liens it currently holds, whether for pre-petition tax years or for the current tax year, on any property of the Debtor until it receives payment in full of all taxes, and interest owed to it under the provisions of this Plan. The failure to pay Galveston County in accordance with the terms of this provision shall constitute an event of default under the terms of the Plan enforceable by Galveston County.

### Class 4 - Secured Claim of Compass Bank - Impaired

Class 4 consists of the Allowed Compass Bank Secured Claim. The holder of the Allowed Class 4 Claim will receive (in full satisfaction of such Allowed Claim): (a) in the event of a cash sale - - all of the Net Sale Proceeds and Pre-Confirmation Remaining Sale Proceeds less (i) an amount equal to all Allowed Class 1 Claims, (ii) an amount equal to all Allowed Class

9

3 Claims, and (iii) an amount equal to the General Unsecured Minimum Payment, the Unsecured Priority Tax Minimum Payment, and the Disbursing Agent Reserve; (b) in the event of a credit bid sale - - any portion of the Property sold via credit bid, plus the Pre-Confirmation Remaining Sale Proceeds less (i), (ii) and (iii) above.

### Class 5 – General Unsecured Non-Priority Claims - Unimpaired

On the Effective Date, each holder of an Allowed Claim in Class 5 shall receive (in full satisfaction of such Allowed Claim) a payment equal to such Allowed Claim plus interest from the Petition Date to the Effective Date at the Federal Judgment Interest Rate.

### Class 6 - Equity Interests - Impaired

The holders of Equity Interests as of immediately prior to the Effective Date shall not receive any payments under this Plan unless and until Creditors in Classes 1 through 5 are paid in full the Allowed amounts of their Claims and until Compass Bank is reimbursed for the General Unsecured Guaranteed Payment and the Unsecured Interest Payment made to the Disbursing Agent.

## IV.
## SALE OF ASSETS PURSUANT TO AUCTION

**A.**    **Sale of Assets**.  Pursuant to the Auction Procedures, an Auction will be conducted within 120 days after Effective Date to determine the respective identities of the Successful Bidders pursuant to the Plan.  In the event that any of the sales of the parcels from the Auction do not close for any reason, a second Auction will be held within 90 days of the first Auction for those unsold parcels.  If any parcel of Property owned by the Debtor is sold jointly with a parcel owned by Sonrisa Properties, Ltd., the premium paid for such combined sale shall be allocated ratably to each seller based on the last highest bids for each parcel individually.

**B.**    **Closing**.  If any Successful Bidder does not consummate the sale by 30 days after the Auction for any reason, then 70% of the Successful Bidder's deposit shall be forfeited as liquidated damages and paid over to the Disbursing Agent to be utilized in accordance with the Plan.  The remaining 30% of the deposit shall be paid to the Auctioneer as a fee.

**C.**    **Release of Liens**.  At the Closing of the Sale of the Property, all holders of Liens on the Property shall release their respective Liens upon the Property as provided in this Plan, and such holders shall execute any instruments reasonably requested to confirm and/or effectuate such release.  Liens shall attach to the Net Sale Proceeds in the same priority as they previously attached to the Property.

**D.**    **Sale Free and Clear**.  Upon Closing, all right, title and interest of the Debtor and its Estate in and to the Property shall vest in the Purchaser free and clear of all Claims, Liens, encumbrances, interests, restrictions, easements, leases, tenancies, agreements of sale and other title objections.

**E.**    **Net Sales Proceeds**.  At Closing, the Net Sales Proceeds shall be utilized to make distributions as provided under this Plan.

**F.**     **Reimbursement of Compass Bank**.  The Disbursing Agent shall reimburse Compass Bank for the General Unsecured Guaranteed Payment and the Unsecured Interest Payment after Creditors in Classes 1 through 5 are paid in full their Allowed Claims but before any distributions are made to holders of Equity Interests in Class 6.

**G.**     **Credit Bid**.  Compass Bank shall have the right to credit bid its Secured Claim at the Auction.  If Compass Bank is the successful bidder on any parcel, Compass Bank shall pay one-half of one percent of the amount of the high credit bid for that parcel to the Auctioneer as compensation.

**V.**

**MODIFICATION OF PLAN**

The Plan may be amended or modified by the Plan Proponent with the approval of the Court after notice and hearing.  If the Court finds after hearing and notice that the proposed modification does not adversely change the treatment of the Claim of any Creditor or the Equity Interest of any Equity Interest holder who has not accepted in writing any modification, it shall be deemed accepted by all Creditors and Equity Interest holders who have previously accepted the Plan.

**VI.**

**MEANS FOR IMPLENTING AND EFFECTUATING THE PLAN**

**A.**     Funding of Plan.  The source of funds to achieve consummation of and carry out the Plan shall be (i) the Net Sales Proceeds; (ii) and cash from Compass Bank, which are to be utilized to satisfy all Claims in order of priority under the Plan.

**B.**     Disbursing Agent.  Elizabeth Guffy, or any successor appointed by the Bankruptcy Court, shall act as the Disbursing Agent.

**C.**     Exclusive Rights and Duties of the Disbursing Agent.  The duties of the Disbursing Agent shall be as follows:

1.     Distribution to Creditors with Administrative Claims.  In accordance with Section IIIA, the Disbursing Agent shall pay the Administrative Claims out of Net Sales Proceeds or cash from Compass Bank, _provided however_, that all funds on deposit with professionals for the Debtor shall be used towards the payment of the Allowed Administrative Claims of those professionals.

2.     Distributions to Creditors with Allowed Claims.  The Disbursing Agent shall have the sole right and duty to make the distributions provided for hereunder as set forth in Article III.

3.     Liquidation of Assets.  The Disbursing Agent shall have the sole right and duty to liquidate the Property and the Mud Receivables.

**D.**     Powers of the Disbursing Agent.  The Disbursing Agent shall have full power and authority to do the following.

11

1. The Disbursing Agent shall be authorized to make disbursements to Administrative and Priority Creditors and other Creditors in accordance with the priority scheme set forth in Article III.

2. The Disbursing Agent shall be authorized to take any and all actions, including the filing or defense of any civil actions necessary to accomplish the above, including but not limited to the signing of deeds and any other documents on behalf of the Debtor as its authorized agent, to transfer title to purchasers of the Property and to defend and prosecute any disputes arising in connection with the auction of the Property.

3. The Disbursing Agent shall be authorized to employ and pay reasonable fees and expenses of such attorneys, accountants, and other professionals, as may be deemed necessary to accomplish the above and shall be entitled to reserve sufficient Cash to pay the projected fees and costs to such Professionals on a post-confirmation basis, to the extent necessary to carry out the duties of the Disbursing Agent, subject to approval by the Bankruptcy Court.

4. The Disbursing Agent may suspend distribution to any Creditor that has not provided the Disbursing Agent with its Federal Tax Identification number or social security number, as the case may be.

**E.**   _Presumption of Disbursing Agent's Authority._   In no case shall any party dealing with the Disbursing Agent in any manner whatsoever be obligated to see that the terms of his engagement have been complied with, or be obligated or privileged to inquire into the necessity or expediency of any act of the Disbursing Agent, or to inquire into any other limitation or restriction of the power and authority of the Disbursing Agent, but as to any party dealing with the Disbursing Agent in any manner whatsoever in relation to the Assets and proceeds therefrom, the power of the Disbursing Agent to act or otherwise deal with said property shall be absolute except as provided under the terms of the Plan.

**F.**   Limitation on Disbursing Agent's Liability.

1. Except to the extent provided for in sub-section F2 below, no recourse shall ever be had directly or indirectly against the Disbursing Agent personally or against any employee of the Disbursing Agent by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Disbursing Agent pursuant to this Plan, or by reason of the creation of any indebtedness by the Disbursing Agent for any purpose authorized by the Plan, it being expressly understood and agreed that all such liabilities, covenants and agreements of the Disbursing Agent or any such employee, whether in writing or otherwise shall be enforceable only against and be satisfied only out of the Estate and every undertaking, contract, covenant or agreement entered into in writing by the Disbursing Agent shall provide expressly against the personal liability of the Disbursing Agent.

2.     The Disbursing Agent shall not be liable for any act the Disbursing Agent may do or omit to do as Disbursing Agent hereunder while acting in good faith and in the exercise of the best judgment of the Disbursing Agent and the fact that such act or omission was advised, directed or approved by an attorney acting as attorney for the Disbursing Agent, shall be evidence of such good faith and best judgment; nor shall the Disbursing Agent be liable in any event except for gross negligence or willful misconduct of the Disbursing Agent.

**G.**     Establishment and Maintenance of Disputed Claims Reserve:

1.     Distributions made in respect of any Disputed Claims shall not be distributed, but shall instead be deposited by the Disbursing Agent into an interest-bearing account styled "Disputed Claims Reserve". The funds in this account shall be held in trust for the benefit of the Holders of all Disputed Claims.

2.     Unless and until the Bankruptcy Court shall determine that a good and sufficient reserve for any Disputed Claim is less than the full amount thereof, the calculations required by the Plan to determine the amount of the distributions due to the Holders of Allowed Claims and to be reserved for Disputed Claims shall be made as if all Disputed Claims were Allowed Claims in the full amount claimed by the Holders thereof. No payment or distribution shall be made with respect to any Claim to the extent it is a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim.

3.     At such time as a Disputed Claim becomes an Allowed Claim the distributions due on account of such Allowed Claim and accumulated by the Debtor (including the Pro Rata share of any dividends or interest earned in respect of such distributions) shall be released from the account and paid by the Disbursing Agent to the Holder of such Allowed Claim.

4.     At such time as any Disputed Claim is finally determined not to be an Allowed Claim, the amount on reserve in respect thereof shall be released from the account and returned to the Disbursing Agent.

5.     The Disbursing Agent shall not be required to withhold funds or consideration, designate reserves, or make other provisions for the payment of any Claims that have been Disallowed by a Final Order of the Bankruptcy Court as of any applicable time for distribution under the Plan, unless the Bankruptcy Court orders otherwise or unless the Court's order of disallowance has been stayed.

**H.**     Delivery of Distributions. Subject to Bankruptcy Rule 9010 and the provisions of the Plan, distributions to Holders of Allowed Claims shall be made at the address of each such Holder as set forth on the proofs of Claim filed by such Holders (or at the last known addresses of such a Holder if no proof of Claim or proof of Equity Interest is filed or if the Disbursing Agent has been notified in writing of a change of address), except as provided below. If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made unless and until the Disbursing Agent is notified of such Holder's then current address, at

which time all missed distributions shall be made to such Holder without interest. Amounts in respect of undeliverable distributions shall be returned to the Disbursing Agent until such distributions are claimed.

**I.**     Time Bar for Cash Payments.  Checks issued by the Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within six months after the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the Disbursing Agent by the Holder of the Allowed Claim with respect to which such check originally was issued.  Any Claim in respect of such a voided check shall be made on or before the later of (a) the first anniversary of the Effective Date or (b) ninety (90) days after the date of reissuance of such check.  After such date, all Claims in respect of void checks shall be discharged and forever barred.

**J.**     Unclaimed Property.  If any Person entitled to receive distributions under the Plan cannot be located within a reasonable period of time after the Effective Date, the distributions such Person would be entitled to receive shall be held by the Disbursing Agent in a segregated interest-bearing account styled Sonrisa Properties, Ltd. Unclaimed Distribution.  If the Person entitled to any such distributions is located within six months after the Effective Date, such distributions, together with any dividends and interest earned thereon, shall be paid and distributed to such Person.  If such Person cannot be located within such period, such distributions and any dividends and interest thereof shall be returned to the Disbursing Agent and such person shall have waived and forfeited his right to such distributions.  Nothing contained in this Plan shall require the Disbursing Agent to attempt to locate such Person.  It is the obligation of each Person claiming rights under the Plan to keep the Disbursing Agent advised of a current address by sending written notice of any changes to the Disbursing Agent.

**K.**     Fractional Dollars.  Any other provision of the Plan notwithstanding, no payments of fractional dollars will be made to any holder of an Allowed Claim.  Whenever any payment of a fraction of a dollar to any holder of an Allowed Claim would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest whole dollar (up or down).

**L.**     Minimum Payment. The minimum amount of any distribution shall be $25. If a payment is due in an amount less than $25, then such payments is hereby waived and the funds shall be retained by the Disbursing Agent for further distribution.

**M.**     Distribution Dates.  Whenever any distribution to be made under the Plan is due on a day other than a Business Day, such distribution will instead be made, without penalty or interest, on the next Business Day.  The Bankruptcy Court shall retain power, after the Confirmation Date, to extend distribution dates for cause, upon motion and after notice and a hearing (as defined in Bankruptcy Code Section 102) to affected parties.

**N.**     Bankruptcy Code Sections 508, 509, and 510.  Distributions under the Plan will be governed by the provisions of Bankruptcy Code Sections 508, 509, or 510, where applicable.

**O.**     Orders Respecting Claims Distribution.  After confirmation of the Plan, the Bankruptcy Court shall retain jurisdiction to enter orders in aid of consummation of the Plan respecting distributions under the Plan and to resolve any disputes concerning distributions under the Plan.

6043191v.1

**P.**     Agreements, Instruments and Documents.  All agreements, instruments and documents required under the Plan to be executed or implemented, together with such others as may be necessary, useful, or appropriate in order to effectuate the Plan shall be executed on or before the Effective Date or as soon thereafter as is practicable.

**Q.**     Further Authorization.  The Disbursing Agent shall be entitled to seek such orders, judgments, injunctions, and rulings from the Bankruptcy Court, in addition to those specifically listed in the Plan, as may be necessary to carry out the intentions and purposes, and to give full effect to the provisions, of the Plan.  The Bankruptcy Court shall retain jurisdiction to enter such orders, judgments, injunctions and rulings.

## VII.
## CRAMDOWN AND CLAIMS ALLOWANCE

**A.**     In the event any Class rejects the Plan, Compass Bank will seek to invoke the provisions of Section 1129(b) of the Bankruptcy Code and confirm the Plan notwithstanding the rejection of the Plan by any Class of Claims or Interests.

> IN THE EVENT ANY CLASS REJECTS THE PLAN THE DEBTOR WILL SEEK TO INVOKE THE PROVISIONS OF 11 U.S.C. §1129(b) AND CONFIRM THE PLAN OVER THE REJECTION OF THE CLASS OR CLASSES.  THE TREATMENT AFFORDED EACH CREDITOR IN EACH CLASS IN THE EVENT OF A CRAMDOWN WILL BE THE SAME AS THAT PROVIDED FOR IN THE PLAN AS THE CASE MAY BE.

**B.**     Allowance of Claims under the Plan.  Allowance is a procedure whereby the Bankruptcy Court determines the amount and enforceability of Claims against the Debtor, if the parties cannot agree upon such allowance.  It is expected that the Disbursing Agent will file objections to Claims of Creditors, if any are deemed necessary, after confirmation of the Plan.  The Plan merely provides for payment of Allowed Claims, but does not attempt to pre-approve the allowance of any Claims other then the Allowed Compass Bank Secured Claim.

**C.**     Objection Deadline.  Prior to the Effective Date, unless extended by order of the Bankruptcy Court for cause, objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made.

## VIII.
## RESERVATION OF RIGHTS

Neither the filing of the Plan, nor any statement or provision contained herein, nor the taking by Compass Bank of any action with respect to the Plan shall be deemed to be an admission against interest or to be deemed to be a waiver of any rights which Compass Bank might have against any entity, and until the Effective Date, all such rights are expressly and specifically reserved. In the event that the Effective Date does not occur, neither the Plan or any statement contained therein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of the reorganization.

## IX.
## REJECTION OF EXECUTORY CONTRACTS

On the Effective Date, all executory contracts not previously assumed shall be deemed rejected.

All parties to any contract rejected will have thirty (30) days from the rejection of their executory contract or lease in which to file a Proof of Claim for damages, if any, resulting from rejection of the contract or lease. Such claim will be subject to the limitation imposed by the Bankruptcy Code and all other applicable laws, rules and regulations.

## X.
## EFFECT OF CONFIRMATION

**A.**     Binding Effect.   As provided for in Section 1141(d) of the Bankruptcy Code, the provisions of the Plan shall bind the Debtor, any entity acquiring property under the Plan and any Creditor, Equity Interest holder, or shareholder of the Debtor, whether or not the Claim or Interest of such Creditor or Equity Interest holder is impaired under the Plan and whether or not such Creditor or Equity Interest holder has accepted the Plan.   After confirmation, the property dealt with by the Plan shall be free and clear of all Claims and Interests of Creditors and Equity Interest holders, except to the extent as provided for in the Plan as the case may be.   The Confirmation Order shall contain an appropriate provision to effectuate the terms of this paragraph XA.

**B.**     Satisfaction of Claims and Interests.  Holders of Claims and Equity Interests shall receive the distributions provided for in this Plan, if any, in full settlement and satisfaction of all such Claims, and any interest accrued thereon, and all such Interests.

**C.**     Vesting of Property.   Except as otherwise expressly provided in the Plan or the Confirmation Order, pursuant to Section 1141(b) of the Bankruptcy Code, upon the Effective Date, all property of the Bankruptcy Estate shall vest in the Debtor free and clear of all Claims, liens, encumbrances, charges or other interests of Creditors and Equity Interest holders.

**D.**     Injunction.  The Confirmation Order shall include a permanent injunction prohibiting the collection of Claims against the Debtor or any property of the Debtor in any manner other than as provided for in the Plan.  All Holders of Claims shall be prohibited from asserting against the Debtor or any of the Property, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not such Holder filed a proof of Claim.  Such prohibition shall apply whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code; or (c) the holder of a Claim based upon such debt has accepted the Plan. Neither the Confirmation Order nor the Plan shall prohibit any Creditor from collecting any Claim against any guarantor or other co-debtor.

## XI.
## U.S. TRUSTEE FEES

**A.**     U.S. Trustee Fees.  The Disbursing Agent shall timely pay post-confirmation quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as the Bankruptcy Court enters a Final Decree closing this Chapter 11 case, or enters an order either converting this case to a case under Chapter 7 or dismisses the case.  After confirmation, the Disbursing Agent shall file with the Bankruptcy Court and shall transmit to the United States Trustee a true and correct statement of all disbursements made by the Debtor for each month or portion thereof, that this Chapter 11 case remains open in a format prescribed by the United States Trustee.  The Debtor shall cooperate with the Disbursing Agent to provide any information reasonably required for the Disbursing Agent to file a statement of disbursement for any period in which the Debtor made any disbursements.

## XII.
## RETENTION OF JURSIDICTION BY THE COURT

After the Effective Date of the Plan, the Bankruptcy Court will continue to have jurisdiction over all matters arising under, arising out of, or relating to this Case and pursuant to and for the purposes set forth in Section 1127(b) of the Bankruptcy Code. Such jurisdiction will be exercised to

(a)     insure that the purpose and intent of the Plan are carried out;

(b)     consider any modification of the Plan under Section 1127 of the Bankruptcy Code before substantial consummation as defined in Section 1101(2) of the Bankruptcy Code;

(c)     hear and determine all Claims, controversies, suits and disputes against the Debtor;

(d)     hear and determine all objections to claims, controversies, motions, applications, suits and disputes that may be pending at or initiated after the Effective Date;

(e)     classify the Claims of any Creditor and to re-examine Claims which have been allowed for purposes of voting, and to determine Objections which may be filed to Claims;

(f)     hear, determine, and enforce all Claims and causes of action which may exist on behalf of the Debtor or its Estate;

(g)     consider and act on the compromise and settlement of any Claim against or cause of action on behalf of the Debtor or its Estate;

(h)     hear and determine all controversies, suits and disputes that may arise in connection with the interpretation, execution, or enforcement of the Plan;

(i)     hear and determine all requests for compensation and/or reimbursement of expenses for services rendered or expenses incurred prior to the Confirmation Date;

(j)     enforce and interpret by injunction or otherwise the terms and conditions of the Plan;

(k)     enter an Order closing the Chapter 11 Case;

(l)     correct any defect, cure any omission, or reconcile any inconsistency in the Plan or Confirmation Order which may be necessary or helpful to carry out the purposes and intent of the Plan;

(m)     consider and act on such other matters consistent with the Plan as may be provided in the Confirmation Order;

(n)     issue orders in aid of execution and implementation of this Plan to the extent authorized by 11 U.S.C. § 1142 or provided by the terms of this Plan; and

(o)     decide issues concerning the Federal or State Tax Liability of the Debtor which may arise in connection with the confirmation or consummation of this Plan.

# XIII.
## MISCELLANEOUS PROVISION

1.     All claims and causes of action in favor of the Debtor's Estate are reserved for possible prosecution by the Disbursing Agent after Confirmation.

2.     Whenever the word "Confirmation" is used in this Plan, it is intended to mean that date upon which the order confirming this Plan is entered by this Court and becomes final.

3.     All notices to the Disbursing Agent shall be addressed as follows:

Elizabeth M. Guffy
Pennzoil Place, Suite 3100
Houston, Texas  77002
eguffy@guffylaw.com (email)


All notices and requests to Persons holding any Claim or Equity Interest in any Class shall be sent to them at their last known address or to the last known address of their attorney of record in the case.  Any such holder of Claim or Interest may designate in writing any other address for purposes of this section, which designation will be effective upon receipt by the Disbursing Agent.

6043191v.1

Validity and Enforceability.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as the same may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms. Should any provision in this Plan be determined by the Court or any appellate court to be unenforceable following the Effective Date, such determination shall in no way limit the enforceability and operative effect of any and all other provisions of this Plan.

Respectfully submitted this 21st day of February, 2011.

Compass Bank
By: _____
Carl Scott
Senior Vice President

Bruce J. Ruzinsky
Jackson Walker L.L.P.
1401 McKinney, Suite 1900
Houston, TX 77010
(713) 752-4204 Telephone
(713) 308-4155 Telecopy
Attorney for Compass Bank

## Exhibit A

**Bidding Procedures**

On February 21, 2011, Compass Bank filed its Third Amended Plan of Liquidation for Sonrisa Realty Partners, Ltd. (the "Plan) in Case No. 10-80026-G3-11 in the U.S. Bankruptcy Court for the Southern District of Texas, Galveston Division (the "Bankruptcy Court"). The Plan provides for, among other things, the sale by auction of all of the real estate of Sonrisa Realty Partners, Ltd. (the "Debtor") consisting of approximately 95 acres in Brazoria County, Texas and any municipal utility receivables related thereto (the "Property").

On _____, the Bankruptcy Court entered an order (the "Confirmation Order"), which, among other things, authorizes the auction of the Real Estate and MUD receivables and authorizes the Disbursing Agent to determine the highest or otherwise best bid for the Real Estate and Mud receivables through the process and procedures set forth below (the "Bidding Procedures").

The Sale will be subject to live competitive bidding on or about _____ at __:00 _.m.

**Participation Requirements**

Open to the Public. Bidder must be a good faith buyer of real estate.

Information Packets. Property Information Packets ("Packets") are available to the public free of charge. In order to receive a Packet regarding the Real Estate being sold at the auction, any prospective bidder may contact the Auctioneer for complete Packet information at:

> Kelly D. Toney
> Tranzon Auction Resolutions
> P.O. Box 1146
> Cypress, Texas 77410-1146
> Phone: 832-220-1100
> Fax: 281-500-1912
> Cell: 713-816-1123
> ktoney@tranzon.com
> www.tranzon.com

The Auctioneer shall make available to any prospective buyer a Packet. The Packets will include the available information to the Auctioneer about the assets being sold, the Bidding Procedures, and any other information reasonably requested by any prospective buyer to be included in the Packet.

**Bid Requirements**

The sale is a live public auction of all of the Real Estate together with a MUD receivables. Bidders should be familiar with the Real Estate and/or MUD receivables.

The sale will be held on _____ at __:00 _.m. at _____. YOU MUST BE PRESENT TO BID. Each bidder must sign a bid registration form which provides that any purchase agreements are non-contingent and show proof of $25,000 in certified funds in order to bid.

All of the Real Estate and the MUD receivables will be sold to the highest bidder(s). The bidding will be managed by the auctioneer and under the supervision of the Disbursing Agent. The highest bid will be called three (3) times before being declared the highest bidder at the conclusion of the auction. Compass Bank ("Bank") will have the right to credit bid at the auction.

Successful bidders, except Bank, shall make a deposit of $25,000 plus 10% of the total purchase price (including the 10% buyer's premium) on the day of the sale for each winning **lot** offering (the "Deposit"). The Deposit shall be in the form of a certified check presented immediately or wire transfer within 24 hours in the amount of $25,000 plus 10% of the total purchase including the 10% buyer's premium price. For instance, if a parcel sold for $100,000, the successful bidder would be required to deposit $11,000 plus the $25,000 certified check. Those funds shall be deposited into a non-interest bearing escrow account (the "Escrow Account") maintained by the Title Company. The Deposit shall immediately become non-refundable and credited toward the purchase price.

Information Packets will be available at the door on the day of the Auction; however, Packets will be available to the public no later than _____ by contacting _____.

By bidding, each bidder acknowledges that they have read and agree to the Purchase Agreement.

**"AS IS, WHERE IS"**

The Sale of the Real Estate and MUD receivables shall be on an "AS IS WHERE IS" basis and without representations or warranties of any kind, nature and description by anyone. All of the Debtor's rights, title and interest in and to the Real Estate and the MUD receivables should be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "Interests") or the completeness of any information provided in connection with the bidding process in each case, such interests to attach to the net proceeds of the sale of the Real Estate and MUD receivables.

**The Auction**

A live public multi-parcel auction (the "Auction") shall take place on _____ at __:00 _.m. Central Time at _____. The Auction will be conducted by _____ ("Auctioneer") under the supervision of the Disbursing Agent. Bid increments shall be at the discretion of the Auctioneer. A 10% Buyers Premium will be added to

2

the high bid and become part of the Winning Bid Price.  The assets will be offered in the following manner:

The multi-parcel auction for the Debtor will be conducted in a ballroom setting where each individual tract is initially offered and bid upon, but not sold.  When the bidding has ceased on the individual tracts, the sum total of the individual bids will be calculated.  A minimum bid increment will be announced by the Auctioneer ("Minimum Bid Increment").  The Auctioneer will then ask for any combination bids for more than one tract that must total at least more than the sum of the individual bids for the tracts plus the Minimum Bid Increment.  After bidding for any combinations is completed, the sum total of the combinations is calculated.  The process will be repeated for as many rounds as necessary to arrive at the highest return possible.  Bidding in this manner continues until the earlier of the announced auction period expiration or that there are no other bids.

At that time, the Auctioneer will announce the winning bidder(s) three (3) times prior to the end of the Auction.  After the Auctioneer's announcement, if there are no more bids submitted, the Auctioneer shall declare the property sold.

**Return of Deposit**

Upon selection of the highest and best bid by the auctioneer, the Winning/Highest Bidder's Deposit shall become non-refundable.  In the event a dispute arises about whether a Deposit is refundable or non-refundable, the Deposit shall remain in the Escrow Account pending a determination of the dispute by the Bankruptcy Court.

**Failure to Close**

Each transaction evidenced by a Winning Bid shall close not later than 30 days after the auction (the "Closing Date") at which time the Winning Bidder shall pay the balance of the Winning Bid (the Winning Bid amount less the Deposit) into the Escrow Account.

In the event a declared Winning Bidder fails to timely perform any of its obligations as set forth above or pursuant to the definitive agreements, the Winning Bidder shall forfeit the Deposit as liquidated damages.

**Reservation of Rights**

The Auctioneer, with the consent of the Disbursing Agent, may notify the bid procedures at any time prior to or during the Auction if the Auctioneer determines, in it judgment, that such modifications will better promote the goals of the Auction process and are in the best interest of the bankruptcy estate and the creditors thereof, provided, however, Compass Bank's right to credit bid cannot be changed or modified in any way without the prior written consent of Compass Bank.

All information provided by the Disbursing Agent or the Auctioneer regarding any property sold at this Auction is assumed to be accurate and is not intended to mislead.  However, the Disbursing Agent and the Auctioneer expressly state herein that the information should not be

solely relied upon when bidding and that each bidder must make their own independent investigation with regard to the property being offered for sale prior to the placing a bid.

The Court shall retain jurisdiction to enforce and interpret these Bidding Procedures.

**Inspection of Documents & Real Estate**

The Auctioneer will schedule a time to make available the appropriate documents concerning the Real Estate and MUD receivables in the Property Information Packages provided to interested Bidders at the Scheduled Property Inspections, and at the auction site on auction day.

Any dispute relating to the Auction of the Property will ultimately be resolved by the Bankruptcy Court.

4