IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

|  |  |  |
|---|---|---|
| IN RE | ) | |
| | ) | |
| SONRISA REALTY PARTNERS, LTD., | ) | CASE NO. 10-80026-G3-11 |
| | ) | |
| Debtor, | ) | |
| | ) | |

<u>MEMORANDUM OPINION</u>

The court has held a confirmation hearing as to "Compass Bank's Third Amended Plan of Liquidation for Sonrisa Realty Partners, Ltd." (Docket No. 145). The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered confirming "Compass Bank's Third Amended Plan of Liquidation for Sonrisa Realty Partners, Ltd." (Docket No. 145). To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

<u>Findings of Fact</u>

Sonrisa Realty Partners, Ltd. ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on January 4, 2010.

On the petition date, Debtor owned approximately 97.5 acres of undeveloped real property near the intersection of Interstate Highway 45 and Farm to Market Road 646 in Galveston

County, Texas.  A related entity, Sonrisa Properties, Ltd. ("SPL"),[1] owned approximately 22.97 acres of real property, some of which was contiguous to a portion of Debtor's real property.

SPL and Debtor are joint makers on a note payable to Texas State Bank.  Compass Bank is the successor in interest to Texas State Bank.

Carl Scott, a senior vice president of Compass Bank, testified that the loan provided initially for interest-only payments.  He testified that some payments were made on the note.  On September 5, 2008, Compass Bank accelerated the note.  (Compass Exhibit 6).  Scott testified that the loan was accelerated based on a default in payments by SPL and Debtor.

Randal Hall, the beneficial owner of Debtor's equity, testified that Debtor was formed in 2004, for the purpose of selling its interest in the real property.  He testified that Debtor initially did not actively market the property for sale for two years.  He testified that, in the two years prepetition, Debtor did not sell any of its property.

By orders entered March 31, 2010 in the SPL case (Docket No. 27, Case No. 10-80012-G3-11), and April 1, 2010 in the instant case (Docket No. 24), the court authorized the sale

---

[1] SPL is the Debtor in Case No. 10-80012-G3-11.  SPL and Compass Bank each proposed a plan in the SPL case.  On the date of the confirmation hearing as to Compass Bank's plan, Compass Bank announced that it has withdrawn its plan in the SPL case.

of 18.615 acres (17.8475 acres owned by SPL, and 0.7675 acres owned by Debtor) to Galveston County, Texas, for $2,250,000. The portion of the sale proceeds allocated to Debtor was $92,767.92. None of the proceeds allocated to Debtor were paid to Compass Bank.

By order entered June 29, 2010, the court authorized the sale of 1.695 acres of Debtor's real property to APAAR Hotel, LLC, for $553,755. The order authorized Debtor to pay $250,000 to be applied as a principal reduction to Debtor's debt to Compass Bank. (Docket No. 41).

On October 26, 2010, Debtor filed a motion seeking to have the court consider the terms of a proposed sale of 35 acres of the remaining property, in camera. (Docket No. 64). After a hearing, the court denied the motion, without prejudice, on grounds the motion was premature in the absence of a motion to sell the property, either in a plan or separately. (Docket Nos. 78, 79).

On September 24, 2010, Debtor filed its first plan of reorganization. (Docket No. 45). In the first plan, Debtor proposed to restructure its debt to Compass Bank, extending the maturity date by three years. Debtor proposed to obtain an equity infusion of $1 million from an outside investor, which would be deposited into an account at Compass Bank and used to pay interest as it accrued. Debtor proposed to pay

3

administrative expenses and the claims of ad valorem taxing authorities in full, and pay unsecured claims after Compass Bank was paid in full. In the first plan, Debtor proposed that its prepetition equity interest holders would retain their interests, but would receive no payments until all creditors were paid in full. Debtor also proposed that Compass Bank be prohibited from taking any action to enforce a judgment it has obtained against, <u>inter alia</u>, Debtor's general partner, and Randal Hall, the beneficial owner of Debtor's equity.

Under Debtor's first plan, Debtor proposed the sale of 35 acres to an unspecified purchaser, for an unspecified price.[2]

On October 20, 2010, Compass Bank filed its own first plan of liquidation and disclosure statement (Docket Nos. 59, 60).

On December 21, 2010, Debtor filed a motion seeking emergency approval of a sale of up to 35 acres to Tanger Devco, LLC ("Tanger"), for $250,000 per acre. The proposed sale called for Tanger to deposit $90,000 in refundable earnest money shortly after the sale was approved, and an additional $400,000 after the expiration of a "study period," lasting one year. Tanger was to pay a nonrefundable $10,000 as an option fee for the one year

---

[2]The terms of Debtor's proposed sale were later identified in the motion to sell filed on December 21, 2010 (Docket No. 103).

4

study period.[3]  (Docket No. 103).

The court held hearings as to both Debtor's and Compass Bank's disclosure statements.  By order entered January 4, 2011, the court approved Debtor's disclosure statement, as supplemented.  (Docket No. 115).  By order entered January 20, 2011, the court approved Compass Bank's disclosure statement, as supplemented.  (Docket No. 123).  Both orders approving the disclosure statements set a confirmation hearing for February 22, 2011.

On February 4, 2011, Debtor filed an amended plan. Debtor's amended plan reflected the terms of a revised agreement between Debtor and Tanger.  Under the revised agreement, as proposed by Debtor, Tanger would loan $1.35 to Debtor, to be used to make a $1 million payment to Compass Bank, to be applied as a principal reduction, and the remainder to establish an reserve to pay interest to Compass Bank as it accrues.  Tanger would obtain an option, for a fee of $100, to purchase the 35 acres described in the previous plan, and an additional exclusive option to purchase an additional 15 acres.  Debtor's amended plan called for Tanger to risk only $100 as a nonrefundable sum during the one year option provided under the plan.  After the first year, Tanger would be required to pay $500,000 in earnest money, and to either close the purchase or forfeit the earnest money, after 18

---

[3]The motion was subsequently withdrawn.  (Docket No. 122).

5

months after the effective date of the Debtor's proposed plan. (Docket No. 128).

On February 10, 2011, Debtor filed a motion to continue the hearing on confirmation of Compass Bank's plan. (Docket No. 134). After a contested hearing, the motion for continuance was denied. (Docket Nos. 140, 141).

Compass Bank filed the instant plan, its Third Amended Plan, on February 21, 2011. The Third Amended Plan reflects Compass Bank's agreement with ad valorem taxing authorities as to treatment of their claim, and deletes language providing that equity interests are cancelled on the effective date. Compass Bank's Third Amended Plan calls for a sale, at an auction to be held within 120 days of the effective date, of Debtor's real property. Compass Bank's Third Amended Plan provides generally for payment of claims on either the effective date, the date of allowance of the claims, or 30 days after the auction. If funds remain after payment of Compass Bank's claim, there will be a distribution to equity interest holders. (Docket No. 145).

Compass Bank's Third Amended Plan specifies that Classes 1 (Administrative Claims) and 5 (General Unsecured Non-Priority Claims) are unimpaired. The remaining classes are impaired. (Docket No. 145).

Classes 3 and 4 (Secured Tax Claims and Secured Claim of Compass Bank) voted to accept Compass Bank's Third Amended

Plan.  Class 6 (Equity Interests) voted to reject Compass Bank's Third Amended Plan.  No votes were cast in Class 2.  (Compass Exhibit 24).

Debtor objects to Compass Bank's Third Amended plan on grounds it was not filed in good faith.  Debtor also objects to a provision determining that Compass Bank's secured claim is allowed "in the amount of $7,664.457.42 plus post-petition interest, costs and attorney fees."

Compass Bank has filed a proof of claim in each of the cases, in the amount of $8,664,457.42, secured by, inter alia, the real property owned by Debtor and by SPL.  (Compass Exhibit 8).  Attached to the proof of claim is a summary.  In the summary, Compass Bank asserts principal of $8,085,951, interest of $561,040.80, and attorney fees and costs totaling $17,464.62.

Scott testified that he calculated an amount owed to Compass Bank as of February 22, 2011, the date of the confirmation hearing, based on a rate after maturity of the loan of 18 percent.  Scott testified that, in addition to the amount of $8,664,457.42, set forth in Compass Bank's proof of claim, $1,739,121.10 in postpetition interest has accrued and $1 million in payments have been applied, resulting in an amount due (exclusive of attorney fees), of $9,386,113.90.  He testified that Debtor's debt to Compass Bank is accruing interest at $3,757 per day.

7

Debtor has argued that the default rate should not apply, and asserts that allowance of Compass Bank's claim in the plan deprives Debtor of due process by depriving it of the opportunity to object to Compass Bank's claim.[4]

Hall testified that Debtor has only one unsecured creditor.  He testified that the one unsecured creditor is an attorney who has represented Hall in his individual capacity in defense of a suit filed against Hall by Compass Bank on a personal guaranty.

<u>Conclusions of Law</u>

Section 1129 of the Bankruptcy Code provides, in pertinent part:

> (a) The court shall confirm a plan only if all of the following requirements are met:
>
> * * *
>
> (3) The plan has been proposed in good faith and not by any means forbidden by law.
>
> * * *
>
> (8) With respect to each class of claims or interests--

---

[4]Debtor did not advance any substantive argument or evidence challenging the propriety of calculation of Compass Bank's claim based on the 18 percent interest rate.  The provision allowing Compass Bank's claim has appeared in each plan filed by Compass Bank.  Moreover, Debtor's objection to the instant plan did not articulate a basis for objection to Compass Bank's claim.  Rather, Debtor objected to the plan's statement that the disbursing agent under the plan was empowered to object to any claim except that of Compass Bank on grounds the plan "should be amended to explain this statement."

>> (A) such class has accepted the plan; or
>
>> (B) such class is not impaired under the plan.
>
> \* \* \*
>
> (b)(1) Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.
>
> (2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
>
> \* \* \*
>
>> (C) With respect to a class of interests--
>>
>>> (i) the plan provides that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or
>>>
>>> (ii) the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

11 U.S.C. §§ 1129(a), 1129(b).

The requirement of good faith must be viewed in light of the totality of the circumstances surrounding establishment of

a Chapter 11 plan, keeping in mind the purpose of the Bankruptcy Code is to give debtors a reasonable opportunity to make a fresh start.  In re Cajun Elec. Power Co-op, Inc., 150 F.3d 503 (5th Cir. 1998).

In the instant case, Compass Bank's Third Amended Plan provides for a sale of Debtor's property, open to all bidders and with adequate bid procedures, in order to make distributions to creditors, and provides generally for payment of all claims in full.  The property is undeveloped land, and Debtor has no employees.  Equity holders retain what remains after the payment of claims.  All creditors except Debtor's professionals have accepted the plan.  The court concludes that Compass Bank's Third Amended Plan was proposed in good faith.

The only objector, Debtor, had not sold any property for two years prepetition, and has proposed delay in payment to Compass Bank (and a prohibition on collection against the beneficial owner of Debtor's equity) for two additional years.  During at least one year of the two year delay, the proposed purchaser would have an exclusive option to purchase, or could decline the option, and pay only $100.  This appears to be to the severe disadvantage of all creditors.

Classes 2 and 6 are impaired, and have not accepted the plan.  Thus, the plan violates Section 1129(a)(8).  However, the plan does not discriminate unfairly, and is fair and equitable as

to the class of equity security holders.  The equity security holders retain their equity interests, and receive what remains only after payment of all claims of creditors.

As to Debtor's argument that the plan deprives it of due process, the court notes that, although the plan allows Compass Bank's claim, Section 502(j) allows a party in interest to seek reconsideration of the allowance of a claim.  The court concludes that Compass Bank's Third Amended Plan meets the standards for confirmation under Sections 1129(a) and 1129(b) of the Bankruptcy Code.

Based on the foregoing, a separate Judgment will be entered confirming "Compass Bank's Third Amended Plan of Liquidation for Sonrisa Realty Partners, Ltd." (Docket No. 145).

Signed at Houston, Texas on February 28, 2011.

```
                                    _____
                                    LETITIA Z. PAUL
                                    UNITED STATES BANKRUPTCY JUDGE
```