IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

|  |  |  |
|---|---|---|
| IN RE | ) ) ) | |
| SONRISA REALTY PARTNERS, LTD., | ) ) | CASE NO. 10-80026-G3-11 |
| Debtor, | ) ) ) | |

MEMORANDUM OPINION

The court has held an evidentiary hearing on "Compass Bank's Expedited Motion for Entry of an Order (I) Setting Forth the Date, Time and Place of Auction Sale, and (ii) Adopting the Supplemented/Corrected Bidding Procedures" (Docket No. 170). The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered granting the motion. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

Findings of Fact

Sonrisa Realty Partners, Ltd. ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on January 4, 2010.

On the petition date, Debtor owned approximately 97.5 acres of undeveloped real property near the intersection of Interstate Highway 45 and Farm to Market Road 646 in Galveston

County, Texas.

Compass Bank filed a proof of claim in the amount of $8,664,457.42, secured by, inter alia, the real property owned by Debtor.[1]

By orders entered on April 1, 2010 and June 29, 2010, the court authorized the sale of 2.4625 acres of Debtor's real property. (Docket Nos. 24, 41). From one of the two sales, $250,000 was paid to Compass Bank, to be applied as a principal reduction to Debtor's debt to Compass Bank.

On October 20, 2010, Compass Bank filed a plan. Compass Bank filed an amended plan on February 21, 2011. (Docket No. 145). Compass Bank's amended plan was confirmed by Memorandum Opinion and Judgment entered on February 28, 2011. (Docket Nos. 155, 156). Debtor moved for reconsideration of the judgment confirming Compass Bank's plan. That motion was denied, by order entered on March 11, 2011. (Docket No. 167). Confirmation of the plan was not appealed.

As this court noted in the Memorandum Opinion addressing confirmation, after marketing efforts beginning no

---

[1]Debtor and Sonrisa Properties, Ltd. ("SPL") were co-makers on a note payable to Compass Bank's predecessor, Texas State Bank, secured by the real property owned by Debtor, and contiguous undeveloped real property owned by SPL. SPL filed a voluntary petition under Chapter 11 of the Bankruptcy Code on January 4, 2010, in Case No. 10-80012-G3-11. SPL's Chapter 11 case was dismissed on SPL's motion, by order entered on April 20, 2011.

later than 2007, Debtor had proposed a plan calling for a sale of up to 35 acres of the property to Tanger Devco, LLC ("Tanger"). Under the sale proposed by Debtor, Tanger would have obtained an exclusive option to purchase the property for one year, for $250,000 per acre, in exchange for a $100 option fee.  (Docket No. 155).

Compass Bank's confirmed plan calls for a sale, at an auction to be held within 120 days of the effective date, of Debtor's real property.  The effective date of the plan occurred on March 14, 2011.

In the instant motion, Compass Bank seeks approval of bidding procedures, addressing an auction to take place on May 19, 2011.  Debtor opposes the motion, on grounds an auction on May 19, 2011 affords insufficient time to allow interested bidders to perform due diligence with respect to the property, and thus would reduce the number of potential bidders and the final auction price.

At the February 22, 2011 hearing on confirmation of Compass Bank's plan, Compass Bank called Kelly Toney, an auctioneer who is the president of Tranzon Auction Resolutions ("Tranzon") as a witness.  Compass Bank proposed to use Toney as an auctioneer for the property.  At the confirmation hearing, Toney testified that the auction could be conducted 90 to 100 days after confirmation.  (Docket No. 183, at p. 10).

At the hearing on the instant motion, Toney testified that a minimum period of time for the auction process is 75 days. He testified that, if the auction is conducted on May 19, 2011, Tranzon will have had 80 days since it was hired to conduct the marketing. He testified that he believes Tranzon has had sufficient time to adequately conduct the auction process in connection with a sale on May 19, 2011.

Toney testified that Tranzon began by gathering data to begin assembling property information packets, prepared advertising and marketing materials for print and online media, and began email advertising.

Toney testified that, beginning on March 20, 2011, Tranzon put a listing for the property on its web site. Beginning on April 1, 2011, Tranzon listed the property on REDNews, a commercial real estate web site. Subsequently, Tranzon listed the property on five additional web sites. Toney testified that Tranzon did print advertising in the Houston Chronicle, Wall Street Journal, USA Today, and several commercial real estate publications, and conducted a "blast email" campaign, all in support of an auction sale on May 19, 2011.

Toney testified that Tranzon made available to potential bidders a property information package on April 20, 2011. He testified that the package, which is 90-100 pages in length, includes information about brokerage services, various

disclaimers, aerial photos, a property detail page and general information about the property itself, including the key map location, utility, flood plain map, and zoning information. He testified that an agreement between Debtor and the Galveston County Management District was included.

Toney testified that 25 entities had requested information regarding the property, as of April 21, 2011. He testified that Tranzon selected May 19, 2011 as the date for the auction in order to conduct the auction before the Memorial Day holiday. He testified that, beginning the week before Memorial Day, potential bidders begin preparing for and taking long vacations.

Randal Hall, Debtor's principal equity holder, testified that he has been in real estate development since 1987. He testified that his company purchases land, improves the property through the construction of utilities, and then sells the land in part or in whole to end users such as homebuilders or commercial users. (Docket No. 198, at p. 17).

Hall testified that he believes the time before the scheduled auction date is insufficient, because a buyer would need to know the water distribution plan, the sanitary sewer plan, obtain a capacity reservation agreement from the City of League City, know the city's roadway plan, and know about whether the owner will be required to extend gas, electricity, and sewer

lines.  (Docket No. 198, at p. 25-26).

## Conclusions of Law

In the instant case, the auction procedures are governed by the confirmed plan.  The plan does not expressly provide that the sale must occur within the constraints imposed by Section 363(b) of the Bankruptcy Code.  However, those constraints have a similar purpose to that of the auction contemplated under the plan: to maximize the value of property available for distribution to creditors.  Thus, the court finds persuasive the authority addressing a sale under Section 363(b) of the Bankruptcy Code.

Under Section 363(b) of the Bankruptcy Code, a sale requires that the proponent articulate a sound business justification for the proposed transaction.  See In re Continental Airlines, 780 F.2d 1223 (5th Cir. 1986).

In the instant case, Compass Bank has articulated a sound business justification for the auction to take place on May 19, 2011.  The plan provides that the auction must take place within 120 days after the effective date.  Toney's testimony that the proposed auction procedures provide sufficient time to bring Debtor's undeveloped property to a successful auction is uncontroverted.  Hall's testimony does not address the sale of the property in its present, undeveloped, condition, but rather presumes that the property must be developed before it can be

sold.  He also claims that insufficient and insufficiently timely information is available in the materials Toney's firm has made available online and in appropriate publications.  However, he offered no proof of this other than his own opinion.  Hall was not offered as an expert in the auctioneering process, nor did the personal experience to which he testified so qualify him.  In addition, Hall's testimony was that the various parcels had essentially been for sale since he first began acquiring them on behalf of Debtor and SPL, although ideally he would like to have unified the parcels and reached certain stages of development (such as utility installation and curb cuts) before entering into a sale.  Hall's testimony reflects his experience as a real estate developer, along with Debtor's attempts to develop the property, but does not reflect the conditions inherent in an auction sale of the property.  Toney's firm has every reason to provide to prospective purchasers as much information as Toney has been able to acquire regarding the subject property; some of this is public information and some of this information is naturally dependent on Debtor's disclosures regarding the property.  The court concludes that the proposed auction sale procedures are sufficient in the instant case.

Based on the foregoing, a separate Judgment will be entered granting "Compass Bank's Expedited Motion for Entry of an Order (I) Setting Forth the Date, Time and Place of Auction Sale,

and (ii) Adopting the Supplemented/Corrected Bidding Procedures" (Docket No. 170).

Signed at Houston, Texas on May 6, 2011.

*[signature]*
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE